## BROWNE v. HARRISON.

## HARRISON v. BROWNE.

Court of Appeals of District of Columbia.

Submitted March 14, 1928. Decided June 4, 1928.

Petition for Rehearing Denied June 25, 1928.

Nos. 1903, 1904.

Patents ⬀90(5)—Senior party held entitled to priority as to invention relating to marine mines, in view of reduction to practice.

Senior party *held* entitled to priority as to invention relating to marine mines designed to be submerged in the sea and by the force of their explosion to destroy hostile vessels, in view of reduction of invention to practice.

Appeal from the Commissioner of Patents.

Interference proceeding between Ralph C. Browne and John K. M. Harrison. From the decision, both parties separately appeal. Reversed in part, and in part affirmed.

R. S. Blair, of New York City, for Browne.

F. B. Fox, of Philadelphia, Pa., and E. G. Mason, of Washington, D. C., for Harrison.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The invention involved herein relates to marine mines, which are designed to be submerged in the sea and by force of their explosion to destroy hostile vessels. Such mines became critically important during the World War as a means of defense against enemy-submarines.

The issues of the interference are stated in seven counts, reading as follows, to wit:

(1) A marine ordnance apparatus comprising an electrodetonator and means for operating said detonator embodying elements submerged in the sea and organized to utilize the condition of electrical potential caused by the action of the sea water on a marine hull in contact with one of said elements.

(2) A submarine device comprising a submerged mine having a conductor extending therefrom, and means by which the mine is exploded by the conditions of electrical potential due to the electrochemical action of sea water upon it and a vessel's hull in contact with it.

(3) A submarine mine adapted for submersion in sea water, an antenna having a length equal to several times the diameter of the mine extending from said mine so that contact may be made therewith by the hull of a vessel, and means whereby, when said contact is made, said mine is exploded.

(4) In marine mine firing gear required electric power in substantial amount for its operation, a battery device as source of such power having a pole element negative with respect to ferrous metal exposed to the sea water, and means for combining the vessel to be attacked with said pole element to form a complete galvanic battery with the sea water as electrolyte, polarization thus taking place on the attacked vessel.

(5) A marine mine equipment having electrical firing means; intrinsically complete in situ, as regards provision for energy supply for operating such firing means, when in the sea; and comprising as source of such energy, a battery device whereof the water of the immediate environment is electrolyte.

(6) In marine mine firing gear having electrical firing means, a battery device whereof the sea water is electrolyte as source of energy for operating such firing means, and means automatically responsive to conditions of attack for causing operation of the firing means, said responsive means being enabled to respond by energy from said battery device.

(7) The combination with a marine mine firing by combination of the vessel to be attacked in a galvanic couple circuit, of an anchor cable therefor comprising a conductor electrically insulated from the mine case and connected to serve as a circuit forming contact antennæ for firing the mine.

The Commissioner of Patents, affirming the unanimous decisions of the lower tribu-

nals of the Patent Office, awarded priority of invention as to counts 1, 2, and 3 to Browne, the senior party. The Commissioner dissolved the interference as to count 4, and awarded priority of invention as to counts 5, 6, and 7 to Harrison, the junior party. Cross-appeals were taken from these awards.

The type of mine involved in the interference embodies a novel application of certain elementary electrical laws. It has long been known that if two metal plates of dissimilar electrical potentials, as for example plates composed respectively of steel and copper, be placed in salt water and connected together by a conductor, an electric current will be produced as in an ordinary electric cell or battery; the salt water serving as the electrolyte and the metal plates as the electrodes. The present invention makes use of this principle in a device for firing submerged marine mines. A copper plate is mounted upon the mine, and a conductor called the antenna extends from it through the firing device, and thence upwardly for a suitable distance to a float submerged below the surface of the water. Accordingly when the vessel having a steel hull contacts with the antenna an electric current is produced; the sea water serving as electrolyte, and the steel hull of the vessel and the copper plate of of the mine serving as electrodes. This combination is termed a sea battery, and the mine is fired, either directly or indirectly, by means of the electric current so produced. It is said that prior to this invention there was no effective marine mine which could be exploded by a hostile vessel unless the vessel came into actual contact with the mine; and therefore, in order to protect a sea area of even moderate size, a large number of mines would be required. But this mine is exploded when a hostile vessel contacts with the antenna, and this may be extended to a distance from the mine restricted only by the effectiveness of the explosive charge contained in it, and a single mine may be equipped with multiple antennæ extending in different directions. Accordingly a given sea area may be protected by a greatly decreased number of mines.

The party Browne first conceived the idea of a marine mine embodying these elements and first reduced the conception to practice. According to his plan of construction the electric current passing through the mine was not sufficiently strong to directly fire the detonator of the mine. This current therefore was used in a relay circuit which operated to close a second circuit equipped with dry cells, whereby a greater current was brought to the detonator, thus firing it and exploding the mine. Browne's invention was practicable and effective, and came at a time in the World War when the submarine peril was acute. The Navy Bureau of Ordnance ordered large numbers of the mines, and it is correctly said that the invention became a potent factor in overcoming the submarine menace; and that it formed the substance of the so-called North Sea barrage of mines planted in the latter part of the war and extending from the north of Scotland to Norway, which assisted in preventing the egress of enemy submarines from the North Sea, and thereby reduced their destructiveness toward the end of the war. It is said that the use of this mine, officially called "Mark VI mine," reduced the number of mines required for the barrage across the North Sea by two-thirds. See "Navy Ordnance Activities, World War, 1917–1918," p. 107 et seq.

It clearly appears that Browne's mines of the Mark VI type, were under production at a factory located at Cambridge, Mass., before Harrison first came upon the scene. He appeared there as a naval inspector to supervise the manufacture of Browne's mines, and received full information from the factory as to their construction. The broad claims of Browne's invention, taken from his application, are to be found in counts 1, 2, and 3 of the issue. It is contended by Harrison that these counts "are lacking in invention and not patentable, because they state indefinite and incomplete combinations in terms of function merely." This contention was denied by the law examiner, and overruled by the examiner of interferences, whose decision upon that subject was successively affirmed by the examiners in chief and the Commissioner of Patents. We approve of the decision as to these counts upon the grounds sufficiently set out by the tribunals of the Patent Office.

Counts 5, 6, and 7 of the issue are taken from Harrison's application and form the basis of his claim. The alleged invention of Harrison consists in taking a mine of the Browne type and increasing the size and altering the form of the copper plate serving as one of its electrodes, thus increasing the wattage of the electric current set up by the sea battery, so that the current thus generated may be connected to the de-

tonator of the mine, thereby exploding the mine directly by means of the sea battery current without the aid of a relay circuit or of dry cells. This method of operating the mine is called "direct firing." In addition to this Harrison extends an antenna downwards from the mine and anchors it in place. These additions are the basis of Harrison's claims, as set out in counts 5, 6, and 7 of the issue.

The decisions of the Patent Office as to these counts are not uniform. The examiner of interferences awarded priority of invention as to them to Harrison. The examiners in chief held that priority as to count 5 should be awarded to Harrison, but recommended that the claim be rejected as unpatentable; and that priority as to counts 6 and 7 should be awarded to Browne. The Commissioner of Patents awarded priority as to counts 5, 6, and 7 to Harrison.

In our opinion, Harrison's "direct firing" device does not amount to invention over Browne's structure. It is well said by the law examiner that, "In the present development of the electrical art, structures are equivalent though one has a local circuit and relay and the other does not." The change of construction was but a mere alteration of elements already obvious in Browne's invention, and cannot entitle Harrison to priority. The same conclusions arise with reference to the downwardly extending antenna of Harrison. Moreover, it is apparent that both of these elements were considered by Browne when constructing his device before the time when Harrison entered the field.

The decision of the Commissioner of Patents as to counts 5, 6, and 7, involved in appeal 1903, is reversed, and priority of invention as to these counts is awarded to the senior party Browne. The decision of the Commissioner of Patents involved in appeal 1904, awarding priority of invention as to counts 1, 2, and 3 to Browne is affirmed.