## HARRISON v. BROWNE.
### No. 3067.

District Court, D. Massachusetts.
Jan. 27, 1931.

Chester G. Clark, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., of Boston, Mass., and Melville D. Church, of Washington, D. C., for defendant.

MORTON, District Judge.

Bill in equity under Rev. St. § 4915 (35 USCA § 63), to obtain the issue to the plaintiff of a patent on sea mines used in war. The plaintiff and Browne, the defendant, were in interference in the Patent Office, and the questions involved were finally taken to the Court of Appeals of the District of Columbia, which decided in favor of Browne. The underlying facts are not in dispute, though there is disagreement on certain technical points. They are sufficiently stated in the opinion of the Court of Appeals to which reference may be made. 58 App. D. C. 228, 26 F.(2d) 1006, 1008.

In 1917 Browne conceived the idea that the water of the sea might be used as the electrolyte of a battery in which the hull of an enemy vessel should constitute one plate, and a metal of different electric potential attached to the mine, but insulated from it, the other plate, and that the current so generated might be used through suitable contrivances to fire the mine. He called it a "sea battery." It was a wholly new idea, well characterized by Mr. Ewing, Chairman of the Munition Patents Board, as "a brilliant conception." Experimental mines were tested by the government in June and July, 1917; and in October of that year the United States made a contract for one hundred thousand mines based on Browne's invention. They were used in the North Sea barrage, and were an important factor in controlling the German submarines. About November 1, 1917, Harrison was assigned to duty as inspector at the plant where these mines were being manufactured. He there learned about the Browne invention.

The current produced by Browne's sea battery was very weak; and he stepped it up by a relay and local circuit from dry batteries to fire the detonator. There does not appear to have been at that time any detonator sufficiently sensitive to be directly fired by his sea battery current. The relay circuit involved certain practical difficulties, especially in maintenance in position. Harrison recognized these difficulties and the great advantage which it would be if the mine could be fired on the current of the sea battery alone. He could not change its voltage, which is fixed by the elements of the battery

and the electrolyte, but he devised an improved form of copper electrode affixed to the mine, which provided much greater area while still being sufficiently stout and rugged to stand up in actual use. By it he was enabled, using a more sensitive detonator, to fire the mine directly from the sea battery current.

The basic conception of using the current of a sea water battery conducted through antennæ contacting with the hull of an enemy vessel to fire a mine was clearly Browne's as has been said. Whether the sea battery current should be used direct, or through a relay and a local circuit, was a mere matter of detail, as the latter is a well-known method of stepping up a weak current. Both ways were equally, I think, within the scope of the invention.

The present question is not whether Harrison should be accorded a patent on his improved form of electrode. He claims a basic patent on all direct firing by a sea battery current. I do not think that this claim is sound. What Harrison did was to improve Browne's electrode so that it produced sufficient current to make direct firing possible, aided perhaps by a more sensitive detonator. On the evidence it appears to be a meritorious improvement on Browne's invention. But to assert, as Harrison's counsel contended, that direct firing is so different from relay firing as to entitle him to a basic patent on it independent of the Browne patent seems to me a gross exaggeration of what Harrison did and to be quite untenable. I fully agree with the conclusion of the Court of Appeals: "In our opinion, Harrison's 'direct firing' device does not amount to invention over Browne's structure. It is well said by the law examiner that, 'In the present development of the electrical art, structures are equivalent though one has a local circuit and relay and the other does not.' The change of construction was but a mere alteration of elements already obvious in Browne's invention, and cannot entitle Harrison to priority. The same conclusions arise with reference to the downwardly extending antenna of Harrison. Moreover, it is apparent that both of these elements were considered by Browne when constructing his device before the time when Harrison entered the field."

As to the claims: All the Patent Office tribunals as well as the Court of Appeals held Browne entitled to the first three. I entirely agree. Claim 4 is out. On claim 5 I agree with the Examiners-in-Chief that it is not patentable. It seems to me merely to state the idea of firing a mine by a sea battery instead of describing means by which the idea is to be put into practice. Claims 6 and 7 depend on whether the conception of direct firing without a relay circuit was within the scope of Browne's invention. As I have intimated in my opinion, it was. Even if at that time a sufficiently sensitive detonator or sufficiently extended electrodes to make direct firing practicable had not been worked out, the way to use them when developed was clearly pointed out. Claims 6 and 7, therefore, belong to Browne.

Decree accordingly.